UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM HENRY
HOWARD, III,

        Plaintiff,                                    Case No.: 3:14-cv-356

vs.

COMMISSIONER OF                              District Judge Walter H. Rice
SOCAL SECURITY,                                Magistrate Judge Michael J. Newman

        Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal.  At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2]  This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 9), the Commissioner's memorandum in opposition (doc. 10), the administrative record (doc. 7),[3] and the record as a whole.

**I.**

**A.  Procedural History**

Plaintiff filed for DIB and SSI alleging a disability onset date of March 12, 2005.  PageID 337-50.  Because Plaintiff last worked on April 7, 2005, the ALJ found his application

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2]"The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

constructively amended to an alleged onset date of April 8, 2005.  PageID 58.  Plaintiff claims disability as a result of a number of alleged impairments including, *inter alia*, a lumbar spine disorder, peripheral neuropathy, chronic pain syndrome, and depression.  PageID 60.

After initial denials of his applications, Plaintiff received a hearing before ALJ Elizabeth A. Motta on March 13, 2013.  PageID 85-121.  The ALJ issued a written decision thereafter finding Plaintiff not disabled.  PageID 58-73.  Specifically, the ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011, but not thereafter;

2. The claimant has not engaged in substantial gainful activity since April 7, 2005, the constructively amended alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: lumbar spine disorder; peripheral neuropathy; chronic pain syndrome; and possible depression (20 C.F.R. 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"][4] to perform light work as defined in 20 CFR 404.1567(b)[5] and 416.967(b) with the following limitations: lift up to 20 pounds occasionally and 10 pounds frequently; need to sit 15 minutes per hour (not necessarily all at once and

---

[3]Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

[4] "Residual functional capacity," or RFC, is defined as the most a claimant can still do despite his or her limitations.  20 C.F.R. § 404.1545(a).

[5] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements.  20 C.F.R. § 404.1567.  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.* § 404.1567(b).  An individual who can perform light work is presumed also able to perform sedentary work.  *Id.*  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  *Id.* § 404.1567(a).

        may be spread out over the hour); no climbing ropes, ladders or scaffolds; no exposure to hazards, such as moving or dangerous machinery or working at unprotected heights; no exposure to vibration; only occasional postural activities, such as climbing stairs/ramps, balancing, stooping, kneeling, crouching or crawling; no fast-paced work or strict production quotas; few changes in the work setting; and only occasional contact with the public, supervisors and coworkers.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born [in] 1964, and was 41 years old, which is defined as a "younger individual age 18-49," on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. Claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 12, 2005, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

PageID 60-72.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 47-50. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

B.   **Evidence of Record**

In her decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 61-70. Plaintiff, in his Statement of Errors, also provides an extensive summary of the record evidence. Doc. 9 at PageID 910-13. The Commissioner, in response, offers no objections to Plaintiff's recitation of evidence. Doc. 10 at PageID 922. Accordingly, except as otherwise noted in this Report and Recommendation, the undersigned incorporates the ALJ's recitation of the evidence as well as Plaintiff's undisputed summary of the record.

## II.

A.  **Standard of Review**

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the

Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is

"disabled" under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

Plaintiff argues that the ALJ erred: (A) in weighing the medical opinion evidence, including the opinion of his treating physician, Dino Morello, M.D.; (B) in assessing his credibility; and (C) at Step Five of the sequential benefits evaluation. Doc. 9 at PageID 913-17. Having carefully reviewed the administrative record and the parties' briefs, and also having carefully considered the ALJ's decision, the Court finds that the ALJ carefully and reasonably reviewed the record; appropriately considered the medical evidence; properly assessed Plaintiff's pain allegations and credibility; and asked appropriate hypothetical questions of the vocational expert ("VE") at Step Five. Thus, as more fully explained herein, the Court finds the ALJ's decision supported by substantial evidence and recommends that the Court affirm the ALJ's non-disability finding.

### A. **Medical Opinion Evidence**

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id*. "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id*. "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (citation omitted) (alterations in original). This requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted). Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406. Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*.

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a

number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406; *see also* 20 C.F.R. § 404.1527(c). In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999). The ALJ's explanation of the weight accorded medical source opinions must be "meaningful." *Ott v. Comm'r of Soc. Sec.*, No. 1:08-CV-00399, 2009 WL 3199064, at *3 (S.D. Ohio Sept. 29, 2009).

An ALJ is not required to accept a physician's conclusion that his or her patient is "unemployable." Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special significance." 20 C.F.R. § 404.1527(d)(3); *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). However, "[t]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

In December 2011, Plaintiff's treating physician, Dr. Morello, opined, *inter alia*, that Plaintiff can stand, walk, and sit for a total of two hours each in an eight-hour workday; is unable to lift any amount of weight; cannot use his hands for repetitive pushing or pulling; and is unable to perform full-time or part-time work. PageID 788. The ALJ assigned "little weight" to Dr. Morello's opinion because it:

> is unsupported by objective signs and findings and is out of proportion with the findings in her progress notes. As discussed above, EMG [electromyography] findings have progressively decreased in severity, and lumbar spine MRIs [magnetic resonance imaging] have generally shown no more than mild to

> moderate findings. The progress notes from New Carlisle Community Health show only some spinal tenderness to palpation and some right foot weakness. These notes otherwise generally document no other significant abnormalities with intact cranial nerves, symmetric deep tendon reflexes, and a consistently normal gait. The [RFC] above for a reduced range of light work adequately accounts for these findings[.]

PageID 69 (citations omitted). Plaintiff argues that the ALJ erred in discounting Dr. Morello's opinion because there is objective evidence supportive of his limitations, namely MRIs performed in 2005 and 2011, and a 2001 EMG. Doc. 9 at PageID 914.

The undersigned finds the ALJ's analysis of Dr. Morello's opinion supported by substantial evidence. While Plaintiff has had numerous MRIs and EMGs, Plaintiff fails to explain how the results of such testing support Dr. Morello's opinion. Jeffrey Hoskins, M.D. interpreted Plaintiff's radiology report in 2006, including past lumbar and thoracic MRIs, and stated "[o]verall, his spine looks like it is in good shape . . . [t]here is no objective evidence of a problem." PageID 634. As to Plaintiff's 2011 MRI, Philip A. Minella, M.D. concluded that "[h]is MRI does not look bad" and that there is no "indication for surgery." PageID 765. Regarding Plaintiff's EMG results, even according to Plaintiff, "the worst [was] in 2001[,]" *i.e.*, four years before Plaintiff's alleged onset date. Doc. 9 at PageID 914. The ALJ extensively reviewed the EMG reports dated after the alleged onset date and found that they show "lesser findings." PageID 65. Plaintiff does not dispute the ALJ's characterization of this evidence, or explain how the more recent EMG results support Dr. Morello's opinion. *See* doc. 9.

Plaintiff also argues that the ALJ erred in granting significant weight to record reviewing physician Leslie Green, M.D.'s 2011 opinion, but not adopting her limitation that Plaintiff be limited to "frequent" pushing and pulling. Doc. 9 at PageID 914. The ALJ found that "the record does not support [such] limitation[,]" and thus declined to adopt it. PageID 68. Though an ALJ's omission of a limitation from an opinion weighed favorably may, in some

circumstances, constitute error, *see O'Ryan v. Comm'r of Soc. Sec.*, 3.14-cv-125, 2015 WL 6889607, at *4-5 (S.D. Ohio July 30, 2015) *report and recommendation adopted by* 3:14-cv-125, 2015 WL 4934190 (S.D. Ohio Aug. 18, 2015), the undersigned finds any potential error in this regard harmless. *See NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766 n.6 (1969). Plaintiff points to no evidence indicating that the addition of a limitation for frequent pushing and pulling would affect his ability to perform the 15,000 light jobs and 1,700 sedentary jobs the ALJ relied upon in finding him not disabled. *See* doc. 9; *see also* PageID 72, 117-20.

Accordingly, the undersigned finds the ALJ's analysis of medical source opinions supported by substantial evidence, and overrules Plaintiff's first assignment of error.

**B.    Credibility**

Plaintiff next argues that the ALJ erred in assessing his credibility and his allegations of disabling physical and mental symptoms. Doc. 9 at PageID 915-16. "Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used . . . . " *Buxton*, 246 F.3d at 773; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). "First, the ALJ will ask whether . . . there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Rogers*, 486 F.3d at 247 (citation omitted). Second, where, as here, the ALJ determines "that such an impairment exists, then he [or she] must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id*. (citations omitted); *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

Plaintiff challenges the ALJ's conclusion at part two of this analysis. In evaluating this second prong, the ALJ must consider a number of "[r]elevant factors," namely: (1) the claimant's

daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) other treatment undertaken to relieve symptoms; (6) other measures taken to relieve symptoms, such as lying on one's back; and (7) any other factors bearing on the limitations of the claimant to perform basic functions. 20 C.F.R. § 404.1529(c)(3); *see also Rogers*, 486 F.3d at 247.

With regard to credibility, the ALJ, and not this Court, "evaluate[s] the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. A claimant's credibility comes into question when his or her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence[.]" *Id*. To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id*. To that end, "the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility'" and such determinations "must find support in the record." *Id*. This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

1. **Physical Symptoms**

The ALJ found Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his physical symptoms not fully credible because they are unsupported by objective medical evidence, including objective signs and findings from Plaintiff's treating and examining

-11-

physicians; and because Plaintiff has not sought the type of treatment one would expect from an individual suffering from disabling chronic back pain. PageID 64-67. Nevertheless, the ALJ found a number of limitations or restrictions on Plaintiff's ability to work arising from his physical impairments.[6] PageID 63.

Plaintiff first argues that the ALJ erred in assessing the credibility of his physical symptoms because "there are numerous MRIs and EMGs in the file," and the ALJ should have obtained the services of a medical expert ("ME") to "interpret the diagnostic testing and address the correct limitations regarding the findings." Doc. 9 at PageID 915. However, "[t]he ALJ is not required to solicit [ME] testimony[,]" and such decision is within the ALJ's discretion. *Rivera ex rel. H.R. v. Comm'r of Soc. Sec.*, No. 3:11-cv-163, 2012 WL 3562023, at *9 (S.D. Ohio Aug. 17, 2012); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009). Here, the ALJ considered evidence of Plaintiff's medical history, including interpretations of his diagnostic testing, his testimony, and opinions from numerous medical sources. PageID 63-70, 634, 765. Given the breadth and depth of the evidence of record, the Court finds the ALJ did not err in failing to call a ME to testify. Additionally, the undersigned previously found the ALJ's determination -- that the objective medical evidence does not support disabling physical limitations -- supported by substantial evidence. *See supra.*

Next, Plaintiff argues that the ALJ's conclusion regarding his treatment history was in error because he received treatment for his back condition and was noncompliant with his medication due to financial difficulty. Doc. 9 at PageID 915. Social Security Ruling ("SSR") 96-7p provides that a claimant's statements "may be less credible if the level or frequency of

---

[6] Specifically, the ALJ limited Plaintiff to: lifting up to 20 pounds occasionally and 10 pounds frequently; sitting 15 minutes per hour; no climbing ropes, ladders or scaffolds; no exposure to hazards; no exposure to vibration; and only occasional postural activities. PageID 63.

treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186, at *7. However, an ALJ cannot discount a claimant's credibility based upon "a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id*.

The ALJ found that, at the time of the hearing, Plaintiff was not taking medication or receiving treatment for his physical impairments. PageID 66. In doing so, the ALJ did fail to consider Plaintiff's testimony concerning his use of painkillers in the past without success, and evidence that Plaintiff discontinued physical therapy because it did not relieve his symptoms. PageID 66, 91, 103. Regardless, in light of the other substantial evidence supporting the ALJ's credibility finding -- *i.e.,* the lack of objective evidence supporting Plaintiff's allegations, including the results of diagnostic testing and findings from Plaintiff's treating and examining physicians[7] -- the Court deems any error in this regard harmless. *Geyer v. Comm'r of Soc. Sec.*, No. 3:13-cv-198, 2014 WL 7176473, at *5 (S.D. Ohio Sept. 19, 2014).

Based on the foregoing, the Court finds the ALJ's credibility determination -- regarding Plaintiff's allegations of physical complaints -- supported by substantial evidence.

---

[7] Plaintiff does not challenge the ALJ's determination concerning the findings of his treating and examining physicians, *see* doc. 9 at PageID 915-16, and the undersigned finds the ALJ's conclusion in this regard supported by substantial evidence. *See* PageID 65-66.

### 2. Mental Symptoms

The ALJ found Plaintiff's complaints of disabling mental symptoms unsupported by objective medical evidence[8] and undermined by his limited mental health treatment and medication noncompliance.[9] PageID 67.

Plaintiff contends that the ALJ erred in concluding that his treatment history undermines his complaints of disabling mental symptoms. The Sixth Circuit holds that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation[,]" and that failure to seek treatment "should not be a determinative factor in a credibility assessment." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). Additionally, the record reflects that Plaintiff stopped taking certain medications for his mental health symptoms because they weren't "doing any good[,]" PageID 115-16 -- an explanation for alleged medication noncompliance that the ALJ failed to consider. *See* SSR 96-7p, 1996 WL 374186, at *7. Any such error in this regard is harmless, however, because substantial evidence supports the ALJ's determination concerning the lack of clinical findings supporting Plaintiff's allegations. *See supra* n. 8. Further, no medical source of record opines that Plaintiff is more limited with regard to his mental impairments than as set forth in the RFC. *See* PageID 69-70.

Accordingly, Plaintiff's second assignment of error is overruled.

---

[8] In discussing the objective evidence, the ALJ noted the clinical findings of James Tanley, Ph.D., who found that Plaintiff demonstrated, *inter alia*, "cordial and cooperative behavior, adequate hygiene, normal speech, relevant and goal-oriented thought processes . . . full orientation, intact recent and remote memory . . . and sufficient insight and judgment to make life decisions[.]" PageID 67, 687-89. The ALJ also noted the findings of Marnie Weston, L.I.S.W. -- a social worker who treated Plaintiff on a few occasions -- who generally documented "appropriate insight, adequate hygiene, full orientation, clear thought processes, normal speech, adequate memory, and good concentration." PageID 67. In light of such evidence, the undersigned finds the ALJ's conclusion -- regarding the lack of objective evidence supporting Plaintiff's complaints of disabling mental symptoms -- supported by substantial evidence.

[9] However, the ALJ included the following limitations arising from Plaintiff's mental impairments in his RFC: no fast-paced work or strict production quotas; few changes in the work setting; and only occasional contact with the public, supervisors and coworkers. PageID 63.

### C. Step Five Determination

Finally, Plaintiff argues that the ALJ erred, at Step Five, by only presenting two hypotheticals to the VE and by failing to include certain limitations in such hypothetical questions. Doc. 9 at PageID 916-18. At Step Five, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal citation omitted). "This kind of 'substantial evidence may be produced through reliance on the testimony of a [VE] in response to a 'hypothetical' question, but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (internal citation omitted). In formulating the hypothetical question, the ALJ needs to incorporate only those limitations that he or she accepts as credible. *See Casey v. Sec. of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

The hypothetical questions asked in this instance incorporated all of the limitations the ALJ reasonably found credible and supported by substantial evidence.[10] PageID 117, 119. In response, the VE identified a significant number of jobs in the national economy that Plaintiff can perform based upon the RFC determined by the ALJ. PageID 118-20. This constitutes substantial evidence of non-disability. *See Leuis v. Comm'r of Soc. Sec.*, No. 96-4049, 1997 WL 225496, at *2 (6th Cir. May 1, 1997). Plaintiff fails to cite any authority for the proposition that an ALJ must present a certain minimum number of hypotheticals to the VE and, accordingly, the undersigned finds no merit to Plaintiff's contention in this regard.

---

[10] In arguing that the ALJ erred by failing to include limitations regarding off-task time and monthly absences, Plaintiff fails to identify any medical source who opined that he is so limited. Doc. 9 at PageID 917.

Based on the foregoing, the undersigned finds the ALJ's Step Five determination supported by substantial evidence, and overrules Plaintiff's final assignment of error.

**IV.**

For the foregoing reasons, the Court finds Plaintiff's assignments of error unmeritorious.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found supported by substantial evidence, and **AFFIRMED**; and

2. This case be **CLOSED** on the Court's docket.


Date:  December 18, 2015                *s/ Michael J. Newman*
                                         Michael J. Newman
                                         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).